[L. A. No. 22506.   In Bank.   Mar. 13, 1953.]

LLOYD C. GRIFFITH, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Miller & Sinclair, Loren Miller and Harold J. Sinclair for
Petitioner.

Alfred P. Peracca and Jerold E. Weil for Respondent.

THE COURT.—The local administrative committee of The State Bar in Los Angeles, recommended that petitioner, an attorney licensed to practice law in this state, be disbarred after finding against him on charges of misconduct as alleged in three counts. The Board of Governors of The State Bar adopted (with some exceptions) the findings of the committee and recommended suspension for two years.

The committee found that petitioner was admitted to practice law in this state on November 15, 1932. As to the first count, that petitioner permitted, aided and abetted Willie Hawkins, a person not licensed to practice law, to practice law and receive compensation therefor, knowingly accepted professional employment from Hawkins resulting from the latter's activities and that Hawkins solicited persons for their legal business. Hawkins' unlicensed practice was known to petitioner, and he aided in permitting him to use the facilities of his office and to use and distribute cards stating that Hawkins was connected with petitioner, an attorney at law. More particularly, on June 30, 1950, Hawkins solicited Vanderbush and Mrs. Kelley, representing that he could obtain a divorce for Mrs. Kelley from her husband. Hawkins obtained a divorce in Texas for Mrs. Kelley and she and Vanderbush were thereafter married. Mrs. Kelley was later charged with bigamy. In January, 1951, petitioner, through the solicitation of Hawkins, was employed by Vanderbush and Mrs. Kelley to annul their marriage and represent her in the bigamy case. The committee found that Hawkins was convicted of practicing law without a license (Bus. & Prof. Code, §§ 6125-6126.) The board eliminated the latter finding.

On count two it was found that in the representation of Vanderbush and Mrs. Kelley, petitioner filed a complaint for annulment, knowing of the Texas divorce of Mrs. Kelley, and told her and Vanderbush that the Texas divorce was void because Mrs. Kelley had never been in Texas and hence was not a resident there. At the hearing in the annulment proceeding petitioner introduced the Texas divorce judgment which recited that Mrs. Kelley appeared in person (which he knew was not true) and failed to advise the court that she had never been in Texas or resided there. As a result of that misleading statement the court held the Texas judgment valid and denied annulment.

The third count deals with Mrs. Alva Porter who was married to Carol Porter. She employed petitioner to obtain a divorce for her from Porter. At the same time, Oran Mc-

Donald employed him to get an annulment of his marriage to Alva, it appearing that she was still married to Porter. She was a resident of California and never had been in Texas. Petitioner made arrangements with Hemphill, a Texas attorney, to get the divorce in Texas. Hemphill obtained the divorce and sent a copy of the judgment to petitioner which he gave to Alva. The judgment recited that Alva was a resident of Texas and personally appeared in the action. Neither was true and petitioner knew it but he advised Alva that the judgment was valid.

It was found, as amended by the board, that petitioner has a previous disciplinary record: "suspension by the Supreme Court for a period of three years, effective May 20, 1945, upon the basis of the record in a State Bar disciplinary proceeding entitled L. A. 1179—Lloyd Cornelius Griffith (Mrs. Leon Russell, complaining witness); a public reproval administered by the Board of Governors on June 22, 1945, upon the basis of a State Bar disciplinary proceeding entitled L. A. 1195—Lloyd Cornelius Griffith (Perry Buckner, complaining witness); and suspension by the Supreme Court for a period of one year, effective May 20, 1948, upon the basis of the record in a State Bar disciplinary proceeding entitled L. A. 1194—Lloyd Cornelius Griffith (Mrs. Minnie McFadden, complaining witness)."

It was concluded that petitioner had violated his oath (Bus. & Prof. Code, §§ 6103, 6067, 6068), rule 3 of the Rules of Professional Conduct, and had committed acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106).

Petitioner contends the evidence is not sufficient to support the findings.

On the first count the evidence shows that petitioner had known Hawkins for over 10 years and they were quite friendly. Petitioner had represented Hawkins in several legal matters including some lawsuits. Hawkins was taking an extension course in law and sometimes used petitioner's library; he also occasionally served papers and ran other errands for petitioner. Apparently he had been engaged in a wholesale business of obtaining Texas divorces for persons in California, but petitioner did not know of his extensive activities until after complaints were filed against Hawkins in July, 1951, for unlawful practice of law; he represented Hawkins in those criminal proceedings. Hawkins used business cards which bore petitioner's name, describing himself as a personal relations counsel and notary public and "con-

nected with'' Attorney Griffith (petitioner herein) with the latter's address and telephone number. Petitioner testified that he knew nothing of Hawkins' use of these cards until July, 1951, but he prepared and notarized an affidavit executed by Hawkins in which it was said that sometime in the early part of 1951 or latter part of 1950, Hawkins asked petitioner for permission to put petitioner's telephone number on his cards and that he was connected with petitioner. Petitioner gave his permission provided Hawkins would use it only in petitioner's business. Two or three weeks later, however, when Hawkins showed the cards to petitioner the latter ordered · their destruction.

Mrs. Kelley, or Mrs. Vanderbush, and Vanderbush, both being married, contacted Hawkins by recommendation of a friend of Mrs. Kelley's to obtain Texas divorces for them which he did for $120 each. Hawkins exhibited one of his cards to them and told them to contact petitioner if there was any difficulty. Mr. Kelley had obtained an interlocutory decree of divorce in California from Mrs. Kelley-Vanderbush and custody of their children. Mrs. Kelley-Vanderbush, by reason of Hawkins' recommendation, telephoned petitioner for an appointment in 1951 and later called to discuss proceedings to modify the custody award. When she got to the office Hawkins was there and introduced her to petitioner and remained during the consultation. Later the Vanderbushes made several business calls on petitioner at one or two of which times they said Hawkins was present. Petitioner testified that he was present only at the first visit. The second call was after Mrs. Kelley-Vanderbush had been advised that a warrant for her arrest for bigamy had been issued. She consulted petitioner in regard to representing her on that charge, and when she showed him her Texas divorce, he told her it was invalid because she had never been in Texas. Petitioner advised Vanderbush to commence annulment proceedings to show good faith and thus help on the defense of the bigamy charge. That was done, the matter was heard and annulment denied, the Texas judgment being held valid. The Vanderbushes testified that petitioner said he would not charge for his representation of them in the bigamy and annulment proceedings because Hawkins had gotten them in trouble and he would try to get them out. Petitioner testified that while no charge for the services was fixed at the time, the Vanderbushes assured him they would compensate him later.

While the foregoing might furnish some basis for the inference that petitioner permitted Hawkins to use his office for the practice of law, permitted the use of his name on Hawkins' cards, and that the Vanderbush business was solicited by Hawkins for petitioner with his knowledge, we are not disposed to rely thereon as a basis for disciplinary action in the face of petitioner's positive testimony that he never authorized Hawkins to solicit business for him or use his name or office in the conduct of his business. While he did testify that he had an idea Hawkins had arranged for the procurement of Texas divorces prior to his consultation with the Vanderbushes, he also said he had no such arrangement with him. It is also true that Hemphill was the same attorney petitioner used in the McDonald proceedings but that is far from showing solicitation. Moreover, there is no evidence from which it may be inferred that petitioner shared or had an agreement to share any fees charged by Hawkins to the Vanderbushes or anyone else.

█ The second count also concerns the representation of the Vanderbushes. The evidence shows that petitioner represented them in the bigamy and annulment proceedings. Petitioner knew and advised them that Mrs. Kelley's Texas decree was invalid because she had never been in Texas. At the hearing of the annulment case petitioner did not have proof of the former marriage of Mrs. Kelley-Vanderbush. He put Vanderbush on the stand and he testified to their marriage and that she had not been divorced. Whereupon the court asked what he had to prove the former marriage, to which petitioner replied that Mrs. Kelley-Vanderbush was present and she had relied upon a Texas decree. The court asked if he had the record, to which he replied that he had a record of the Texas decree, and the court asked for it. Petitioner stated that the decree was being "questioned." To the court's query of who questioned it, petitioner stated her former husband did. The court replied that his (the former husband's) question did not amount to anything, to which petitioner answered that he agreed, and although a bigamy charge had been filed against Mrs. Kelley-Vanderbush, it was his position that the decree was valid; that neither of the parties wanted an annulment When the court ruled that there should be no annulment and none would be granted because of the asserted invalidity of the Texas decree, petitioner stated that is what he wanted.

The judgment given was a denial of an annulment and declaration that the Texas decree was valid. The Texas decree appeared to be valid on its face inasmuch as it recited (albeit falsely) the personal appearance and Texas residence of the parties. There can be no doubt but that petitioner misled the court because he knew that the Texas decree was invalid for the reason that both Mr. and Mrs. Kelley were in California and were not domiciled in Texas at the time the action for divorce was commenced. There was no reasonable basis for him to assert that he could not tell whether the Texas decree was void due to the complexity of the law on the validity of out-of-state divorces because in this case it would be obvious to any lawyer that the decree was invalid. He endeavors to excuse his behavior by asserting that, inasmuch as he was representing Mrs. Kelley in defense of the bigamy charge, it would endanger her cause therein to have it appear that the Texas divorce was not valid and hence she was still married to Kelley when she married Vanderbush. That is not a satisfactory explanation because it would appear that in a sense he was representing conflicting interests, that is, Mrs. Kelley in the bigamy case and Vanderbush in the annulment proceeding. It is patent that he did not want an annulment but rather a declaration of the validity of the Texas decree and he achieved that result by leading the court to believe that the Texas decree was valid when he knew it was not. The second count presents, therefore, grounds for disciplinary action.

The third count condemns petitioner for falsely advising his client Alva Porter McDonald that a Texas divorce decree obtained for her by petitioner through Hemphill, an attorney in Texas, was valid. Alva had married Carol Porter in 1942 in Georgia, separated from him in 1944 and came to California where she resided continuously from early 1945. She married Oran McDonald in April, 1949.

According to Alva's testimony she resided in Texas before she married Carol in Georgia, and in 1944, separated from him in Texas where he remarried. She came to California. She first consulted petitioner in November, 1949, with reference to the existence of her marriage to Carol in connection with a Veterans' Administration matter. Various consultations followed in which she told petitioner she had married McDonald but there was no divorce from Carol; that she lived in Los Angeles County, California, where she was married; that she and Carol separated in Texas, and Carol was

probably there. She made arrangements to have petitioner obtain a divorce for her in Texas, the divorce there being her idea. Petitioner said he knew an attorney in Texas and the divorce there would be legal. The fee was $175 for the divorce and for an annulment for McDonald. She signed the Texas divorce papers presented to her by petitioner. The Texas attorney was Hemphill. She received the Texas decree in June, 1950, by mail from petitioner. It was issued by the court in Dallas County. No annulment proceedings were filed for McDonald and it appears that $100 of the $175 fee was returned by petitioner to McDonald. The Texas decree contained recitals of her residence in Texas and personal appearance there for the divorce proceedings.

Petitioner testified that he referred the divorce case to Hemphill who had previously handled a property matter for him and that the latter sent an interrogatory for Alva to sign and he had her do so; that when he received the decree he sent it to Alva with a letter advising her it was valid and advising the McDonalds to remarry; that he believed a wife (Alva) might retain the domicile of her husband in Texas and that the decree was valid because Hemphill had so informed him; that he was ignorant of the Texas divorce law. Thus he asserts that mere good faith ignorance of the law in conducting a client's affairs is not ground for discipline (see *Friday* v. *State Bar*, 23 Cal.2d 501 [144 P.2d 564]), and that is especially true in a field such as the validity of divorce decrees where the law is far from certain. However, it is not necessary to determine whether this count (count three) is sufficient to justify disciplinary action in view of the result reached on count two.

In view of the previous record of petitioner, *supra*, we believe the punishment recommended is supportable because of petitioner's conduct as charged in count two. Therefore, it is ordered that petitioner be, and he is hereby, suspended from the practice of law for a period of two years, this order to become effective 30 days from the filing of this decision.