[L. A. No. 23814.   In Bank.   Feb. 8, 1957.]

JAMES CHARLES WEBB, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Frank J. Hill, Sr., for Petitioner.

Russell B. Seymour and Garrett H. Elmore for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of The State Bar[1] that petitioner, James Charles Webb, be suspended from the practice of law for a period of six months. We have concluded that the evidence against petitioner is of such unsatisfactory char-

---

[1]Adopted by the affirmative vote of 12 of the 13 board members present and voting.

acter that we cannot accept it as supporting the charges against him, and that the proceeding should be dismissed.

Following hearings before a local administrative committee, which found against petitioner and recommended a three months' suspension, the board made independent findings as follows: As to count one, that petitioner "in collaboration with Leona Spagnol, participated in transactions lacking in good faith, wherein . . . Leona Spagnol, deeded her real property away and secreted certain personal property to hinder and delay a creditor." As to count two, that petitioner "in collaboration with one Otiemae Kennedy, participated in transactions lacking in good faith, wherein . . . Otiemae Kennedy, deeded away her real property for the purpose of hindering, delaying and defrauding her creditors." As to count three, that a purported signature of petitioner as the notary public on a certificate of acknowledgment attached to a deed of trust is his true signature, that petitioner took the acknowledgment as notary public, and "that his participation in said transaction ties in with, and constitutes part of, a pattern or program to hinder, delay and defraud the creditors of a client."[2] It may be noted that the board did not expressly find that petitioner "knowingly" participated in the transaction which allegedly lacked "good faith," although The State Bar urges that that is the fair meaning of the findings, in view of the board's recommendation of discipline.

In reviewing a disciplinary proceeding this court passes upon the sufficiency and weight of the evidence and is not bound by the findings of fact of the local committee or the board, although the burden of showing that the board's action was incorrect is upon petitioner. (*Palmquist* v. *State Bar* (1954), 43 Cal.2d 428, 435 [274 P.2d 640]; *Choate* v. *State Bar* (1953), 41 Cal.2d 399, 405 [260 P.2d 609].)

Petitioner is now 55 years of age, was admitted to practice in this state in 1940, and has no prior disciplinary record. During the period here involved, commencing in 1949, petitioner was also commissioned as a notary public and maintained a law office in Long Beach, in which most of the acts forming the basis of the subject charges allegedly occurred.

### COUNT ONE

The substance of the first charge against petitioner is

---

[2] Although not specifically so stated in the record, it inferentially appears that these disciplinary proceedings against petitioner were initiated on the complaint of the Leona Spagnol named in count one, and of John Kennedy, former husband of the Otiemae Kennedy named in count two.

that in September, 1949, while acting as attorney for Mrs. Leona Spagnol in a divorce proceeding, petitioner advised the client to conceal household furniture upon which $1,500 was owing to a finance company, and to transfer her home, in which she had an equity of some $3,500, out of her name by means of a deed signed in blank, in order to avoid a levy thereon by the finance company, and that thereafter the name of petitioner's secretary was inserted in the deed as grantee. Petitioner denies advising Mrs. Spagnol to take any steps for the purpose of hindering or delaying the finance company, and claims that the deed was completely filled out at the time Mrs. Spagnol signed it and that it was given for the purpose of securing sums owing petitioner by Mrs. Spagnol and for the further purpose of handling the property during her absence from Long Beach.

Upon extended analysis of the conflicting testimonies of the several witnesses we are impelled to accept petitioner's testimony, much of which is corroborated by his secretary, in preference to that which opposes it. The finance company, asserted to have been the victim, or intended victim, of the alleged hindering activities, does not itself make any charge against petitioner. No representative of the company was even produced as a witness. The case against petitioner is based almost entirely upon the testimony of Mrs. Spagnol, whose story is not only uncorroborated as to the pertinent details, but is contradicted in some material respect by every other witness who testified as to count one and is also inconsistent within itself as to any alleged misconduct on the part of petitioner. For example, Mrs. Spagnol testified that on the date she claimed petitioner advised her to secrete her furniture from the finance company, she was then able to pay the finance company the amount owed them, thus showing she was not then insolvent and that it was not to keep that company from taking the furniture that she moved it. There is no showing that the company suffered any prejudice or loss from any act of petitioner. Both Mrs. Spagnol's testimony and other evidence tends to show that she moved the furniture in order to secrete it from her husband, with whom she was having marital difficulties, and to induce him to make the payments on it. That she succeeded in this objective is established by Mr. Spagnol's testimony. He testified that Mrs. Spagnol told him she was losing the home and had the furniture in Hollywood and asked if he wouldn't try to help her pay for the furniture and reestablish the home; ''She

went back to this man in Hollywood [not connected with this proceeding], staying in the home with him; and she had borrowed $150.00 from this man, . . . and she said this man wouldn't give the furniture back unless she paid that $150.00 that she borrowed . . . I paid the $150.00 and paid the $1,500.00 due on the furniture which she had agreed to assume when we separated [Mrs. Spagnol was not herself a signatory to the finance company paper]. . . . [S]he cried on my shoulder and I felt sorry for her.'' Mrs. Spagnol confirmed that Mr. Spagnol paid the finance company the $1,500 ''after we reconciled.''

Further, Mrs. Spagnol admitted that she was indebted to petitioner at the time she executed the deed to her home to him and that she had requested petitioner to handle the renting of the house for her and the making of payments on it to the holder of an encumbrance. It also appears that the key was delivered to petitioner for the purposes stated. Moreover, the evidence indicates that Mrs. Spagnol thereafter attempted unsuccessfully to borrow additional money from petitioner, and that she subsequently admitted to a witness that she had transferred the home to petitioner because of attorney fees she owed him, but that she now had him ''before the Bar Association and was going to put him and his secretary behind bars because he had tried to take the home away from her . . . She said, 'Well, I am going to teach him a lesson, so he won't do that to anyone else . . . As soon as we win the case, me and Mr. Kennedy [involved in counts two and three of the charges against petitioner] are going to sue him for $10,000 damages and we are going to buy a Cadillac car. . . . We know that we will get the $10,000 and besides, we are going to put him behind bars.' '' Actually, the home was reconveyed to Mrs. Spagnol following preliminary investigation by a State Bar committee and ''just shortly'' after petitioner ''got the information that she was in financial difficulties and was in danger of losing her property.''

In considering petitioner's defense against the charges, we must bear in mind that not every lawyer commands clients of such wealth and such character that it should reasonably be thought that they would not on their own initiative engage in activities of the type here alleged and then, for further gain, or to avoid payment of fees for legitimate services, charge the attorney who had rendered a proper service, with advising the misconduct which the clients themselves had originated.

By reason of the unsatisfactory nature of the evidence against petitioner and of his positive denials of wrongdoing (see *Griffith* v. *State Bar* (1953), 40 Cal.2d 470, 474 [254 P.2d 22]),[3] we are impelled to the conclusion that no misconduct on his part has been established as to count one. (See also *Sullivan* v. *State Bar* (1946), 28 Cal.2d 488, 494 [170 P.2d 888].)

## Count Two

The substance of the second charge against petitioner is that in March and in July, 1949, he consulted with and assisted a client, Mrs. Otiemae Kennedy, to secrete and conceal from some of her creditors various parcels of real property owned by her, by means of various transfers to John L. Frogge, to ''H. E. Thompson'' (petitioner's secretary) and to petitioner himself, and to secrete and conceal from some of Mrs. Kennedy's creditors proceeds of sales of or loans against certain of her real property, in the amount of $4,000. Respondent The State Bar concedes that with respect to this count a problem exists as to the sufficiency of the evidence to support the board's finding of participation by petitioner in Mrs. Kennedy's transactions, but urges that certain testimony favoring petitioner is evasive and improbable and that it is reasonable to infer that certain admitted acts by petitioner's secretary were done as petitioner's agent.

Without detailing the circumstances of the various transfers admittedly made by Mrs. Kennedy, as to most of which petitioner, as notary, took her acknowledgment, it suffices for the purposes of this opinion to state that here again the character of the evidence against petitioner is unsatisfactory to us, as it seemingly also appeared to the board, which found merely that petitioner ''participated in transactions lacking in good faith,'' wherein Mrs. Kennedy made transfers assertedly in fraud of creditors.

The entire case against petitioner with respect to this count seems to be based on inference piled on inference, whereas there is no direct testimony that Mrs. Kennedy actually made

---

[3]In the Griffith case this court commented: ''While the foregoing might furnish some basis for the inference that petitioner permitted Hawkins [a person not licensed to practice law] to use his office for the practice of law, permitted the use of his name on Hawkins' cards, and that the Vanderbush business was solicited by Hawkins for petitioner with his knowledge, we are not disposed to rely thereon as a basis for disciplinary action in the face of petitioner's positive testimony that he never authorized Hawkins to solicit business for him or use his name or office in the conduct of his business.'' (P. 474 of 40 Cal.2d.)

or intended to make transfers in fraud of creditors, that any creditor of hers was hindered or defrauded by her transfers, or that petitioner himself had any guilty knowledge or motives. In truth, every transfer appears to have been made to a creditor and was consistent with an attempt to pay off Mrs. Kennedy's debts. In those cases where the transfer was of property of a value substantially exceeding the amount owing to the transferee, the testimony of the transferee was that he or she took the property as security for the debt and agreed to pay off other creditors (including first mortgagees, who were in no wise prejudiced by the transfers) out of the proceeds to be raised by the properties. The only part played by petitioner in the transfers (except as to one to himself, which undisputed testimony shows he took to secure a substantial debt owed to him) was as the notary public who took the acknowledgment. As such, he needed only to know that the one acknowledging her signature as grantor was in fact the person she claimed to be; he was not required to know the purpose of the transfers, and the record indicates that, at least as far as petitioner was aware, Mrs. Kennedy was merely attempting to liquidate her assets and discharge her debts. Although he knew that her creditors were pressing her, she had told him that she had ample assets and that she knew what she was doing and had been advised by others that it was all right to make the transfers involved. The summary schedule of Mrs. Kennedy's debts and assets filed in her subsequent involuntary bankruptcy proceedings indicates that her assets substantially exceeded her debts.

It is to be noted that Mrs. Kennedy made no complaint against petitioner and her testimony supports his denials of wrongdoing. As hereinabove indicated (footnote 2, *supra*), it inferentially appears that these disciplinary proceedings against petitioner were initiated on the complaint (in addition to that of Mrs. Spagnol) of John Kennedy, former husband of Mrs. Kennedy and former client of petitioner. Mr. Kennedy testified, among other things, that he had been convicted of two felonies in Texas, one for selling liquor and one for forgery, but had been pardoned in 1935; that he was one of the petitioning creditors in involuntary bankruptcy proceedings against Mrs. Kennedy, and had solicited two other creditors to join the petition, after telling them that Mrs. Kennedy had transferred her property for the purpose of defrauding them.

It appears that petitioner or respondent produced every

possible witness who was involved in the allegedly improper transfers, and *every witness* gave testimony which in some material aspect supports the conclusion that there were no improper motives or knowledge on the part of petitioner, or, for the most part, on that of Mrs. Kennedy. In such a light, it seems difficult to conceive what more petitioner, however innocent, could have done in making his defense.

The impeachments and inconsistencies claimed by respondent to be running through the testimony were in the main as to minor matters, and do not appear to destroy the basic defense that, while petitioner may not have agreed with Mrs. Kennedy's course of action and while in some respects his secretary may have used his office more freely for her own purposes than petitioner was aware of (see *Griffith* v. *State Bar* (1953), *supra*, 40 Cal.2d 470, 474), petitioner was not apprised of any improper actions or motives on the part of either of them. We are persuaded that petitioner is not shown to be guilty of any wrongdoing which supports discipline.

### COUNT THREE

█ Petitioner's name appears as notary public on the certificate of acknowledgment attached to a trust deed executed by his secretary as trustor and covering certain of the Kennedy property. In the body of the trust deed the secretary is described as "H. E. THOMPSON, a single woman, herein called TRUSTOR," although she was actually then married to one James. It is charged that petitioner attested a notarial acknowledgment of her signature, although he knew she was married.

Petitioner denies that the signature appearing on the acknowledgment certificate is his and denies that he executed it, and states that he suspects the secretary placed his name thereon. Handwriting experts testified to directly conflicting opinions as to whether the signature was that of petitioner. It may further be noted that the notarial acknowledgment does not itself describe the secretary as being either single or married, but only as "the person whose name is subscribed to the within instrument." When this proceeding was before the board of governors for the second time, petitioner unsuccessfully sought leave to reopen, also for the second time, to present additional oral testimony of the secretary to the effect that petitioner was not present when his name was affixed to the trust deed and did not attest, or authorize the placing

of his name on, the acknowledgment; the secretary's affidavit to this effect was submitted.

As conceded by respondent, this count is of less importance than counts one and two. Apparently it was intended to tie in with the count two charges against petitioner. In view of our conclusion that no discipline is warranted with respect to counts one and two, we are likewise of the view that little importance should be attached to the count three charge.[4] The evidence as to such charge falls short of establishing conduct warranting disciplinary action.

For the reasons above stated it is ordered that this proceeding against petitioner be, and it is, dismissed.

---

[4] There has also been lodged with this court a copy of an affidavit dated January 6, 1956, by petitioner's secretary, stating that the secretary signed petitioner's name to the acknowledgment certificate involved in count three. The State Bar states that it does not concede that the affidavit is part of the record or that the facts therein stated are true. By reason of the conclusion we have reached on the record already filed with the court, no weight has been accorded to such affidavit.