[L. A. No. 15542.   In Bank.—October 14, 1936.]

ROY E. MAGGART, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Hickcox & O'Connor, William Hodges and Leo R. Friedman for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—On March 8, 1935, there was served on Roy E. Maggart, an attorney at law of this state, an order to show cause why he should not be disciplined for alleged acts of professional misconduct involving moral turpitude. The notice required the petitioner to appear before Local Administrative Committee No. 6 at Los Angeles, on March 27, 1935, at 7 P. M. to be heard on charges of misappropriation of certain funds entrusted to him by May J. McGuire and the issuance to her, in attempted repayment, of checks in amounts ranging from $50 to $3,000 when there were insufficient funds in the attorney's account with which to meet such payments. The petitioner filed an answer to the charges admitting the receipt of the sums stated, but denying liability by reason of his claim to a portion thereof as attorney fees, and that liability to repay the balance

was incurred by virtue of loans made to him and not in the relationship of attorney and client. He defended the charges respecting the issuance of checks returned "n. s. f." on the ground that they were post-dated and taken by the complainant as such with the knowledge that there were insufficient funds on deposit at the time of issuance. The attorney also pleaded payment of six of said checks.

The attorney did not appear at the hearing noticed for March 27, 1935, but was represented by W. H. Hodges, Esq., as his counsel. Mr. Hodges reported the petitioner's inability to be in attendance by reason of professional engagements elsewhere, but stated that he could be present the following night. It was also stated to the committee that the petitioner had delivered to Mr. Hodges a check for $1500 which he promised to pay on account of his indebtedness to Mrs. McGuire on the following Saturday. A request for continuance was denied, and the taking of testimony proceeded with the understanding that the petitioner could read the testimony and at a postponed hearing call in any witness he desired to cross-examine and offer evidence in his own behalf. Upon the written request of the petitioner the hearing was continued three times, to April 3, April 10, and April 17, 1935, but on none of said dates did the petitioner make any appearance. On April 17, 1935, the matter was ordered submitted. The committee transmitted its report and recommendation of disbarment to the Board of Governors. A hearing was had before the board, which adopted the committee's recommendation. The petitioner thereupon instituted these proceedings for review.

At the hearing before the board, held on the morning of July 22, 1935, the petitioner appeared with his counsel, August J. O'Connor, Esq. The petitioner presented to the board his application for a hearing *de novo* before the local administrative committee on the ground that he had not been able to be present at the hearing or postponed hearings before the committee; and on the further ground that he could produce evidence to prove a complete defense to all the charges. The affidavits filed with the application did not set forth the nature of the defense nor the substance of the additional evidence as required by the rules of the board. Nevertheless the board permitted the petitioner to state orally what he expected to prove and

the witnesses who would testify in his behalf. The board denied the application for a hearing *de novo* before the local administrative committee, but granted leave to the petitioner to produce his witnesses or stipulate as to the substance of their testimony and proceed on the evening of the same day to the taking of evidence before the board to substantiate any defense he might have and to cross-examine witnesses theretofore examined by the committee. This course was consented to and was followed by the petitioner and his counsel without any objection. Any contention which the petitioner now makes that the board should have remanded the matter to the local committee for a hearing *de novo* is therefore unavailable. The board, pursuant to section 32 of the State Bar Act (Stats. 1927, p. 42; Stats. 1929, p. 1258), "may either act upon the report (of the committee) or may take additional evidence, or set aside the report and hear the whole case *de novo,* as it may elect". The board elected, with the consent of the petitioner and his counsel, to take additional evidence. At the hearing thus had before the board, the petitioner testified on his own behalf, produced additional witnesses and evidence, and cross-examined the complainant, May J. McGuire. It is not contended that the petitioner was not fully and fairly heard on his defense, nor does the petitioner attempt to state that any different or more favorable showing would have been made on a hearing *de novo* either before the local committee or the board. In the absence of any injustice suffered by the petitioner, he was not entitled as a matter of right to have the case reheard before the local committee merely because he had made no appearance before it, especially where from the record it must be concluded that he was given every opportunity to make the appearance he requested. The record does not necessarily support the petitioner's statement made to the board that he was unable to be present at any of the dates to which the hearing before the local committee was postponed, and the board was justified in concluding that full justice and fairness could be accorded the petitioner by taking additional evidence at the hearing before it.

It is our conclusion on these proceedings that the petitioner has not shown that the acts of professional misconduct found to have been committed by him are not

based on sufficient evidence. The petitioner was admitted
to practice law in this state in 1922. At the time he became
attorney for May J. McGuire he was thirty-four years of
age and had been in active practice for ten years. In 1932
he was substituted as the attorney for Mrs. McGuire in her
divorce action against her husband. No agreement was
made at that time for compensation for his services. Mrs.
McGuire delivered to the petitioner the sum of $1100 for
the purpose of buying outstanding accounts of the McGuire
Cabinet Company and for costs in the matter of a contem-
plated involuntary bankruptcy proceeding to be filed against
it. The petitioner was also paid $75 to discharge incidental
expenses in connection therewith. The petitioner was unable
to purchase such accounts and the bankruptcy proceeding
was never filed. The petitioner, however, retained the
amounts received. Subsequently and in July of the same
year the divorce action was tried and the court granted
an interlocutory decree of divorce to the husband on his
cross-complaint, and to the wife custody of the daughter
and certain sums for their support. The petitioner did not
try the case nor make any preparation personally for the
trial thereof. About two weeks previous to the trial he
turned the case over for preparation and trial to two junior
assistants in his office. After the judgment was rendered
the petitioner promised Mrs. McGuire that he personally
would prosecute an appeal from the judgment. Upon this
understanding Mrs. McGuire consented to the application
of the $1100 theretofore received to the payment of his
services on the appeal. On February 16, 1933, the District
Court of Appeal dismissed the appeal because of the failure
of the appellant to file a transcript within the time allowed
by law and because of the acceptance by her of benefits
awarded by the decree. (*McGuire* v. *McGuire,* 129 Cal.
App. 644 [19 Pac. (2d) 7].) These facts justify the con-
clusion that the petitioner committed a breach of trust,
both by his failure to keep the terms of his employment and
by the retention of the $1100 claimed to have been earned
by him.

In December, 1933, Mrs. McGuire delivered to the peti-
tioner the sum of $1,000 for the purpose of placing a bid
on real property of her husband's which was about to be
sold under foreclosure proceedings. The bidding proceeded

beyond the sum authorized and the amount was not used for that purpose. Instead the petitioner induced Mrs. McGuire to permit the petitioner's use of said sum, together with $500 additional which she delivered to him, for the benefit of certain unnamed persons in the acquisition of oil leases at Huntington Beach, on the promise of the petitioner that she would be paid a bonus of $1,000 for the use of said sum of $1500. The petitioner does not contend that the money was not used for said purpose nor that he was not repaid for its use in accordance with the agreement; but no accounting thereof was made to the complainant. Subsequently the complainant authorized the petitioner to place $500 of said sum in escrow in the matter of a trade of certain property on the complainant's behalf. The transaction, however, was never completed, and the petitioner withdrew the amount from escrow and retained it.

About June, 1934, the petitioner prevailed upon the complainant to lend him further funds and induced her to that end to mortgage the furniture in her home for the sum of $1100, and promised to pay the cost of obtaining the loan. In lieu of interest on said sum he executed and delivered to her an assignment of two per cent of an interest he expected to acquire in a certain oil lease at Huntington Beach. Such assignment was also designed to compensate her for interest on the total indebtedness then owing by the petitioner to the complainant which, exclusive of the initial $1100 paid to him, amounted to $3,535. About this time he also executed and delivered to her his ninety-day noninterest-bearing note for the latter amount.

Beginning on May 12, 1934, the petitioner commenced his efforts to repay his indebtedness to the complainant. About that time he gave the complainant a post-dated check for $50, although at the time he had less than $10 in the bank, and the check was returned unpaid. On June 12, 1934, he gave her his post-dated check for $50, although he had less than $5 on deposit, and the same was returned unpaid. Post-dated checks of August 22, 1934, for $150, when his account was less than $110; September 7, 1934, for $50, when his account was less than $10; November 10, 1934, for $233.88, when his account was less than $10; and December 11, 1934, for $500, when his balance was $76.04, suffered the same fate. On September 28, 1934, he

delivered to her a check dated the same day for $200 drawn on a bank with which he had no account, but in which he opened an account after the check had been returned unpaid. After subsequent attempts to collect the amounts some of the foregoing checks were paid, until on October 29, 1934, the petitioner in writing admitted a balance of indebtedness in the sum of $2,863.88. Mrs. McGuire complained to The State Bar of California on October 30, 1934. At a preliminary hearing held on January 15, 1935, before Local Administrative Committee No. 2, Department B, for Los Angeles County, at which the petitioner appeared, the complainant reported to the committee that she had received the petitioner's check for $3,000 dated January 25, 1935, which, if it was paid, she would be willing to accept in full settlement of the petitioner's indebtedness. He had theretofore obtained from her a reassignment of the two per cent oil lease interest. On the petitioner's representation that the check would be paid, the committee continued the hearing to February 5, 1935. In the meantime, however, the petitioner placed a stop-payment order with the bank and the check was returned unpaid for that reason, although the petitioner had a bank balance of not exceeding $108 during the month of January. On February 5th the petitioner upon his request was given a further opportunity to make the check good, and a continuance was ordered to February 19th. His failure in that behalf was followed by the service of the notice to appear before Local Administrative Committee No. 6 on March 27, 1935. At the hearing before the board in July, 1935, Mrs. McGuire stated that the petitioner had repaid to her all but $1,000 of her claims against him, with the exception also of the $1175 originally advanced in the matter of her divorce action.

From the foregoing briefly stated and admitted facts it is apparent that the petitioner was seeking to gain time to repay to the complainant what in his opinion was due her, viz., all moneys with the exception of the $1,000 bonus promised in lieu of interest, and exclusive of the amount advanced in connection with the divorce proceeding which he claims he has justly earned. We have not repeated herein all details of the conflicting evidence of the complainant and the petitioner respecting his conduct in relation

502

to the various matters entrusted to him and in his purported attempts to repay amounts deposited with him or borrowed from Mrs. McGuire, or with reference to whether the latter was informed that the attorney had insufficient funds to meet payments of the checks issued to her. It is sufficient to say that on the record here presented the committee and the board are not shown to have been unjustified in rejecting the petitioner's version of the facts where it is contended they have done so. ■■■ The petitioner is not entitled to any indulgence by reason of restitution of moneys wrongfully retained, especially where such restitution is made merely as a matter of expediency and under pressure. (*Herrscher* v. *State Bar of California*, 4 Cal. (2d) 399 [49 Pac. (2d) 832].) In the present case the attorney made no offer or attempt to return fees claimed by his client not to have been earned, nor may it be said here that the attorney performed services of great or any value to his client. Furthermore, the creation of the civil liability upon which the petitioner relies in the matter of the private loan transactions between him and his client, cannot relieve him from amenability to disciplinary proceedings if his conduct involve moral turpitude, dishonesty or corruption. (*Jacobs* v. *State Bar*, 219 Cal. 59, 64 [25 Pac. (2d) 401].)

■■■ The petitioner has failed to meet the burden reposing in him to show that the recommendation of disbarment is erroneous or unwarranted by the evidence. The record sufficiently discloses that the petitioner appears to be wanting in that attribute of common honesty which insures his integrity to the lay clientele. In such a case disbarment is not a too severe measure of discipline. (*State* v. *Mannix*, 133 Or. 329 [288 Pac. 507, 290 Pac. 745].)

It is ordered that the petitioner be disbarred from the practice of law in the courts of this state effective thirty days after the filing hereof.

Rehearing denied.