[S. F. No. 19243.   In Bank.   Sept. 20, 1955.]

LEO A. SULLIVAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Leo A. Sullivan, in pro. per., and Ivan C. Sperbeck for Petitioner.

Robert T. Harbaugh, Carl E. Simon, Jr., and Garrett H. Elmore for Respondent.

THE COURT.—By two orders to show cause petitioner was charged with 15 counts of professional misconduct, and hearings were held before a local administrative committee of the State Bar in Alameda County. No evidence was presented with respect to some of the counts, and with respect to others, the local committee concluded that no misconduct had been shown. With respect to the remaining five counts, however, the committee concluded that petitioner "has been guilty of acts constituting a violation of his oath and duties as an attorney and counselor at law within the meaning of section 6103 of Article 6 of the Business and Professions Code as the same are prescribed in sections 6067 and 6068 of . . . [that code], and violating Rule 9 of the Rules of Professional Conduct of the State Bar of California [commingling of funds], and has been guilty of conduct denounced by section 6106 of the Business and Professions Code [acts involving moral turpitude.]" Its findings of fact were approved and adopted by the Board of Governors of the State Bar by a vote of ten to four, and its recommendation that petitioner be suspended from the practice of law for one year was adopted by a vote of nine to six. The matter is now before this court for review.

Counts 2 and 14 involved similar acts of alleged misconduct.

*Count 2.* The local committee found that on July 17, 1952, Smith paid petitioner $350 to secure the release of a friend of Smith's from Santa Rita Prison Farm of Alameda County. Petitioner agreed that if he did not secure the prisoner's release by August 1, 1952, he would return the money. Petitioner visited the prisoner at the prison farm and informed him and Smith of the difficulties that would be encountered in securing a release. Petiitioner testified that his investigation revealed that the prisoner's release would involve a change in the terms of his probation that would be difficult to obtain. No such change was effected, and the prisoner

was released at the end of his term on November 28, 1952. At the hearing in May, 1953, Smith testified that he had telephoned petitioner's office and talked to his secretary repeatedly demanding the return of his money and that he had not been paid. Petitioner was not present at this hearing, but he testified at a later hearing that he had not seen Smith after he had received the $350 and did not know where he could be found. He expressed willingness to refund the money to Smith at any time.

*Count 14.* The committee found that Mrs. Mahoney had paid petitioner $200 of her brother's money on petitioner's representation that he could secure the brother's release from jail in 10 days. The brother was serving a six-month term in the San Francisco County jail as a condition of his probation following a conviction of rape. Petitioner visited the prisoner at the jail but did not secure his release. Mrs. Mahoney testified that petitioner told her he would refund the money if her brother was not released. Petitioner, on the other hand, denied having promised to return the money if he were not successful and denied having told her that her brother's release could surely be obtained. When the brother demanded the return of the money, petitioner testified that he told him he thought they should consult Mrs. Mahoney and that he was entitled to some fee for his services. Thereafter an action was brought against petitioner for the fee, and a default judgment was entered. Petitioner has paid all but $60 of the default judgment. He testified that he did not contest the action because of the unfavorable publicity that might be involved.

*Count 5.* The committee found that petitioner received $175 from representatives of a local branch of the National Association for the Advancement of Colored People for filing costs and as a retainer fee to represent Dyke Hilliard as plaintiff in an assault and battery and false arrest action. Petitioner informed Hilliard and the representatives of the organization that he thought Hilliard had a good case and that he would not take it if he did not think some money could be obtained. The balance of his fee was to be 25 per cent of any recovery. Petitioner asked Hilliard to come to his office so that he could send him to a physician for an examination, but when Hilliard arrived at the appointed time, petitioner was not at his office. Several months later the representatives of the N.A.A.C.P. asked petitioner at the courthouse if the action had been filed. He told them it had

not but gave no explanation. He promised the return of the money but was not in his office when they called at his suggestion to receive it. Although he also promised the return of the money on another occasion, it has not been repaid. Petitioner testified, on the other hand, that he received the money for the purpose of investigating the case, that he did investigate the case and determined that certain witnesses known to Hilliard would be required. When Hilliard failed to produce the witnesses, petitioner concluded that nothing further could be done.

*Count 7.* The committee found that Mrs. Henderson paid petitioner $125 to prosecute a civil action on behalf of her minor son for damages for injuries he had suffered at the hands of a police officer of the city of Oakland. He gave Mrs. Henderson a receipt for the money as "full costs in civil suit for son." Petitioner did not commence a civil action against either the officer or the city or file a claim with the city. He falsely represented that a claim had been filed with the city and that an offer of settlement of $7,500 had been made. The only damages recovered were $400, the payment of which was made a condition of probation at the time of the officer's conviction of criminal charges growing out of his attack upon Mrs. Henderson's son. Petitioner has not repaid the $125 to Mrs. Henderson. Petitioner testified, on the other hand, that he investigated the case and determined that no suit could be brought against the city and that the officer did not have sufficient property to justify a civil action against him. He informed Mrs. Henderson of these facts and told her that the best chance of recovery lay in securing an order for payment as a condition of probation. He denied that he told her he had filed a claim with the city or that a settlement offer of $7,500 had been made. Mrs. Henderson was satisfied with the services he rendered that aided her in securing the $400 that was paid. The probation report substantiated petitioner's testimony that the officer had no appreciable assets that could be levied upon for the payment of a civil judgment.

*Count 12.* The committee found that petitioner received $75 for representing Jesse Hembree in a criminal prosecution for assault and battery in which Hembree was acquitted. Hembree then asked petitioner to bring a wrongful arrest action against the complaining witness in the criminal prosecution. Petitioner agreed to do so, and Hembree paid him $200 and received a receipt for that amount "for costs of

civil suit.'' Petitioner filed an action against the complaining witness in the municipal court and made an investigation of his assets. An offer of settlement of $150 was made by the defendant in the civil action and rejected by Hembree. Thereafter Hembree advised petitioner that he was dissatisfied with his handling of the case and stated that he wanted to get another attorney. Petitioner advised Hembree that he was free to do so and that when he had obtained another attorney, he would be agreeable to signing a substitution of attorneys. Petitioner took no further action in the suit for wrongful arrest. Hembree has not asked for the return of the $200 or any part thereof, and petitioner has neither made nor offered to make any refund.

After making specific findings with respect to the counts on which evidence was presented, the local committee further found that all of the allegations of fact in the notices to show cause that were not consistent with the specific findings were not true; that the testimony of petitioner's four character witnesses, judges and attorneys of Alameda County, with respect to his good character and high skill and ability was true; that petitioner ''has given unstintingly his advice and assistance to many young attorneys in the community as well as his advice and services without charge to many persons needing the services of counsel''; and that petitioner was ''during the periods complained of, in a poor state of health, both mentally and physically brought about in part at least by reason of the tremendous case load undertaken by him.'' It concluded that in its opinion petitioner's ''defalcations are the result of his poor state of health and not the result of corrupt or dishonest motives.'' Petitioner was admitted to practice in this state in 1921, and is now about 59 years of age. Other than suspension for nonpayment of dues on two occasions, petitioner has no prior disciplinary record.

With respect to counts 7 and 12 we have concluded that the evidence and the findings do not support the conclusion that petitioner was guilty of professional misconduct. ■ In the latter case petitioner was paid $200 to prosecute a civil action and he filed a complaint and made an investigation. There is no finding that he did not fully discharge his duties to his client until his client informed him that he wanted to get another attorney, and there is nothing in the record to indicate that $200 was not a fair fee for the work petitioner did before he was in effect discharged. In the absence of any request by the client for an adjustment of the fee, there

is no basis for concluding that petitioner should have voluntarily refunded any part of it.

With respect to count 7 it is true that petitioner received $125 for the purpose of bringing an action for assault and battery and that no action was filed. Petitioner investigated the case, however, and determined that a civil action would be fruitless. He testified that he so informed his client and that she was fully satisfied with his efforts towards securing $400 for her injured son as a condition of probation. Although the committee found that petitioner falsely informed his client that a claim had been filed with the city and that a $7,500 settlement offer had been made, petitioner's testimony contradicted that of his client in this respect, and we are inclined to believe petitioner. He would appear to have had no reason to mislead his client by indicating that a fictitious offer of settlement had been made. It seems more likely that the figure of $7,500 might have been suggested to the client as an amount that might be secured should a financially responsible defendant be found, and the client may well have confused an estimated amount of her son's damages with the settlement petitioner told her she might secure as a condition of probation. Moreover, the probation report corroborates petitioner's testimony that a civil judgment could not be collected against the police officer, and it is not contended that the city was liable for his tort. It thus appears that petitioner received a fee for the purpose of filing an action, but because of circumstances revealed by his investigation, he assisted his client in securing a recovery through another channel instead. Under these circumstances we cannot say that he could not conscientiously contend that he was entitled to retain the fee he had received for the services he had rendered, and any dispute with respect to his liability to return all or part of it should be determined in a civil action and not in a disciplinary proceeding. (*Herrscher* v. *State Bar,* 4 Cal.2d 399, 402-403 [49 P.2d 832].)

Petitioner's conduct with respect to counts 2, 14, and 5 cannot be condoned and warrants disciplinary action. Although in none of these situations did the committee find or the evidence show that petitioner was remiss in his duties toward his clients by failing to render services that might have been successful in effectuating the purposes sought, in all of them the evidence justified the conclusion that he was grossly negligent either in his dealings with respect to his fees or in failing to inform the client of the progress of his case. Thus

under the terms of his contract with Smith, petitioner was obligated to return his $350 fee when he failed to secure the release of Smith's friend from the prison farm. He seeks to justify his failure to return the fee on the ground that he was unable to locate Smith. Smith, however, was in frequent communication with his office, and it is reasonable to conclude that had petitioner made any effort to do so he could easily have arranged to discharge his obligation to him. ■ Similarly, although there is no finding that petitioner promised to return his $200 fee if he failed to secure the release of Mrs. Mahoney's brother from the San Francisco jail, his own testimony indicates his recognition that he did not earn more than a part of this fee. Instead of making a reasonable effort to settle the matter with his client, however, he ignored the problem until an action was brought against him and then permitted a default judgment to be entered.

■ The Hilliard matter also indicates gross negligence or carelessness by petitioner in dealing with his clients once he had determined that the contemplated legal action was not feasible. Petitioner received $175 for the costs of filing an action and for a retainer fee. When petitioner determined that an action could not successfully be prosecuted he should have informed the representatives of the N.A.A.C.P. of this fact, and it would appear that he was at least guilty of a technical commingling of the part of the $175 advanced for filing costs. Petitioner made no effort to inform these persons of what he had done or why he had not filed an action. Even if it be assumed that he should not be expected to have had all the information in mind at the time he was questioned in the courthouse, he could and should have arranged to make a satisfactory explanation of the services he had rendered for the fee he received. Instead he put these clients off by repeated promises to return the money that were not fulfilled.

■ Although "Gross negligence is a breach of the fiduciary relationship that binds an attorney to the most conscientious fidelity to the interests of his client," and it "warrants disciplinary action, since it is a violation of his oath to discharge his duties to the best of his knowledge and ability" (*Clark* v. *State Bar*, 39 Cal.2d 161, 174 [246 P.2d 1]), we have concluded that the punishment recommended by the Board of Governors is too severe in this case. ■ None of petitioner's misconduct appears to have prejudiced any of the clients' interests that he was retained to promote. Thus petitioner's shortcoming was not in failing to perform ser-

vices for his client but only in neglecting properly to inform them of what he had done and in failing to settle his accounts with them after his services had terminated. Moreover, such misconduct was not the result of corrupt or dishonest motives, but the result of poor health brought about in part by the tremendous case load undertaken. Given this case load and the fact that petitioner has no prior disciplinary record involving his relations with his clients, it would appear that his present difficulties arose from a failure properly to choose between limiting his practice as his health dictated and neglecting some of his obligations to his clients. In view of petitioner's habit of giving "unstintingly his advice and assistance to many young attorneys in the community as well as his advice and services without charge to many persons needing the services of counsel," this choice was undoubtedly a difficult one to make. Petitioner's duties to his clients should have been fully discharged, however, and petitioner should not have put himself in a position in which the burden of his practice seriously threatened and actually impaired his ability to discharge his obligations. Nevertheless, in the light of all of the factors considered above, including the fact that two of the counts relied upon by the local committee and the Board of Governors are not supported by the evidence and findings, we have concluded that petitioner will be sufficiently punished if he is suspended from the practice of law for three months.

It is ordered that Leo A. Sullivan be suspended from the practice of law for a period of three months, commencing 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied October 19, 1955, and the time for commencement of the period of suspension was extended to begin January 2, 1956.