[S. F. No. 19879.   In Bank.   June 6, 1958.]

LEO AUBREY SULLIVAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Leo Aubrey Sullivan, in pro. per., and Joseph Morozumi for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT—In three proceedings before local administrative committees of The State Bar (for Alameda County) petitioner was found guilty of nine counts of professional misconduct. The complaints, all similar in nature, in general involve charges that petitioner accepted fees and payments on account of fees for the rendition of future professional services, that he failed to devote the necessary attention to the matters involved and neglected to give satisfactory reports to or make adjustments to the clients, in most instances retaining the sums paid to him. We have concluded that petitioner has failed to sustain his burden of showing lack of support for or injustice in the subsequent recommendation, made by the Board of Governors of The State Bar, that he be suspended from practice for a period of three years.

In the first proceeding the local committee found culpability on four counts. They note that although petitioner received full notice of all hearings he at no time made any appearance before the committee and offered no evidence to show any extenuating circumstances for his conduct. Their recommendation was that petitioner be publicly reprimanded and also required to make restitution of fees collected by him, for which he failed to render services required by his employment as counsel in each of the four counts.

In the second proceeding, heard before the same local committee, petitioner likewise offered no evidence. The committee found culpability on three counts, including a finding as to one matter that petitioner had himself retained the sum of $150 entrusted to him for forwarding to opposing counsel in a divorce matter. The committee considered the fact that petitioner "has for some time been suffering from an illness which periodically confines" him, and made its recommendation "with the knowledge that other proceedings" were cur-

rently pending against petitioner in which further discipline might be imposed. The recommendation was that petitioner be suspended from practice for 60 days and ordered to make restitution of the $150.

In the third proceeding, heard by a different committee, culpability was found on each of the two counts involved. The committee took into consideration[1] the record in the proceeding then pending before the same committee in which petitioner was eventually suspended from practice for three months by order of this court (*Sullivan* v. *State Bar* (1955), 45 Cal.2d 112 [287 P.2d 778]), and found that the facts shown in that proceeding, together with those found in the instant one, "show a continuing course of conduct on the part of" petitioner, that the matters complained of in one count of the present proceeding "were done at the time" that petitioner was appearing in his own behalf before the same committee in the prior proceeding. The committee also found that it "has no evidence before it of extenuating circumstances, in connection with the acts complained of," that petitioner offered no evidence other than his own testimony "in answer to and relevant to the charges," and "failed to produce witnesses and evidence within his power to produce when requested so to do" to corroborate his own testimony. The committee recommended a three-year suspension from practice.

With petitioner's consent the three proceedings were consolidated for hearing by the Board of Governors of The State Bar, which by a vote of 13 board members made its own findings of culpability by petitioner on each of the nine counts. By a vote of 12 to 1, with two members not voting, the board has recommended that petitioner be suspended from the practice of law for a period of three years. In so recommending, the board also took into consideration the three-months' suspension ordered in 1955. (*Sullivan* v. *State Bar* (1955), *supra*, 45 Cal.2d 112.) The matter is now before this court for review.

1. LeBoulanger matter. The board found: In November, 1953, one Crowell employed petitioner to represent Al LeBoulanger, then in jail in Los Angeles awaiting trial on criminal charges; petitioner was paid $500 as a retainer on account of such representation; aside from one short conference with LeBoulanger petitioner "wilfully and negligently

---

[1]Under rule 29.1, Rules of Procedure of The State Bar.

failed to render any services to his client and wilfully and negligently failed to appear on three occasions when his client's case was called for trial."

The record shows that early in November, 1953, Crowell, a former client of petitioner, asked petitioner if he knew an attorney in Los Angeles or if he would like to take LeBoulanger's case, and petitioner said he would like to handle it, that he had other cases in Los Angeles and thought he could help LeBoulanger. Petitioner later told Crowell he would need $1,000 to go to Los Angeles, that he needed "something for expenses." Crowell gave petitioner $500 and received from petitioner a receipt reading, "Recd. of Mr. Crowell $500, for case of LeBoulanger in L.A. Leo A. Sullivan." Crowell testified that petitioner told him not to worry about "the rest" until "we get this straightened out," that petitioner thought LeBoulanger had a very good case but he wanted to get down there before LeBoulanger got mixed up with other defendants involved in the same criminal charges. Crowell stated further that the money was paid for petitioner to handle the case, not just to talk to LeBoulanger; that part of the money was for travel; that Crowell intended to pay the remaining $500 at the end of the trial. LeBoulanger by deposition testified that petitioner visited him once in the jail and stated he, petitioner, had been retained by Crowell to defend LeBoulanger, for the latter not to talk, that petitioner was his lawyer and would "take care of everything from there on," that he would see LeBoulanger "before I went up for my plea" and would see about arranging a bond; that was the last LeBoulanger saw of petitioner. Thereafter LeBoulanger was in court on four occasions, but petitioner was not present. The court ultimately appointed the public defender to represent him until petitioner could come to Los Angeles. Subsequently, almost 11 months after the original employment of petitioner, LeBoulanger entered a plea of guilty to one count. He was represented by the public defender, who was formally appointed the same day. Petitioner was not present, although LeBoulanger was informed by his (LeBoulanger's) wife that petitioner was supposed to be there. LeBoulanger was sentenced to 10 years to life, and was in prison at the time of his deposition.

Crowell later asked petitioner "what he was going to do about the money" (the $500), and complained he did not think "it was right, what he had done," and petitioner told him "it wasn't over yet." Crowell could not thereafter reach

petitioner either personally or by telephone, although he attempted to do so. There is no evidence in the record that petitioner ever prepared any papers or did anything further in the LeBoulanger matter than shown by the above-recited evidence.

Although he failed to testify before the committee, petitioner in his brief now asserts the evidence shows that his agreement with Crowell was to go to Los Angeles and discuss the nature of the charges and the strength of the case pending against LeBoulanger, that he did go to Los Angeles "and went through all of the proceedings against LeBoulanger"; that he made three trips to Los Angeles, on the last of which he was "informed that all of the defendants, including LeBoulanger, had made a complete statement admitting their guilt of the charge"; that petitioner so informed Crowell, who "At all times" knew that petitioner had received information from LeBoulanger "completely changing the complexion of his case because of his confession." Further, asserts petitioner, "At no time did petitioner ever agree to participate in any trial of LeBoulanger. . . . Petitioner informed . . . Crowell that . . . LeBoulanger had pled guilty and to expend further money on his behalf would be useless. . . . At no time was petitioner ever the attorney of record for LeBoulanger, nor did he ever fail to appear on any occasion when the case was called in court, by reason of the fact that he was not the attorney for . . . LeBoulanger at any time." References to the record in this proceeding, made by petitioner in his brief, utterly fail to support his assertions.

2. Sitko matter. The board found: Petitioner was employed by one Mike Sitko to bring an action in his behalf to recover money allegedly stolen from him; petitioner "wilfully and negligently failed to render any services or take any steps to commence or prosecute such action, and wilfully and negligently ignored and refused to answer repeated 'phone calls from his client relating to said representation."

The record shows that in June, 1954, Sitko, a hotel owner, discussed with petitioner a criminal complaint against a tenant, which had been dismissed. Sitko testified that petitioner said that for $50 he could get the case "re-opened" and the accused would have to go back to jail. At petitioner's request Sitko paid him $50 and received a receipt therefor which reads: "June 23rd, Received of Mike Sitko, $50 to investigate case in S.F. Leo Sullivan." Petitioner promised to call Sitko the next day but failed to do so. Sitko tele-

phoned petitioner twice but failed to reach him. On another day Sitko went to petitioner's office and was told by petitioner to meet him at the Oakland City Hall the next day; however, petitioner failed to appear at the City Hall, although Sitko waited for over an hour and then tried unsuccessfully to reach petitioner at the latter's hotel room. About a week later Sitko tried to talk to petitioner at the courthouse, but petitioner evaded him. He later went 8 or 9 times to try to catch petitioner in the lobby of the latter's hotel, telephoned his office 20 times, and went to his office, all without success. There is no evidence that petitioner ever did anything for Sitko after the employment was accepted. Sitko later filed an action for $50 against petitioner in small claims court.

Petitioner asserts in his brief that the receipt given for the $50 paid him by Sitko shows that the sole purpose of the employment was to investigate the criminal case in San Francisco, and that Sitko's testimony shows that petitioner informed Sitko that ''insofar as the claim case was concerned there was nothing further that could be done.'' The record as referred to by petitioner does not bear out the latter assertion; Sitko's testimony was that petitioner, on the one day Sitko was able to find him in his office, stated that ''he said he had not done nothing.'' Petitioner makes no other references to the record.

3. Williamson matter. The board found: Petitioner was employed by a Mrs. Williamson for the purpose of moving for a new trial of a criminal case in which her husband had been convicted of a violation of section 261 of the Penal Code and to prosecute an appeal from the judgment of conviction; petitioner was paid the sum of $800[2] on account of his fee and for costs of the proposed appeal; shortly thereafter he falsely represented to Mrs. Williamson that an appeal had been taken and that a petition for a writ of habeas corpus had been prepared by him, both of which representations petitioner knew to be false; petitioner made the representations for the purpose of concealing from Mrs. Williamson the fact that he had not performed services as agreed and ''lulling her into the belief that the cause committed to him. was progressing in usual routine.''

The record shows that in October, 1953, one Williamson,

---

[2] Respondent State Bar notes that this $800 figure is in error, as the evidence shows that the total agreed fee was $800, on which $200 was paid.

following a jury trial of several days in which he was represented by petitioner, was found guilty of rape. Immediately thereafter petitioner told Mrs. Williamson that he would move for a new trial and that his fee for a new trial would be $800. Mrs. Williamson raised $200, and petitioner said, "Give me that, and that will be all right." The new trial motion was made, but denied. Petitioner then quoted a fee of $600 more for an appeal, and said that the $200 paid would be applied to a total fee of $800 for the new trial motion and an appeal. Seemingly nothing further was paid to petitioner. The record indicates that thereafter petitioner did, however, make various misrepresentations to Mrs. Williamson and to Williamson's mother, Mrs. Arwood, that he had filed a notice of appeal, that "he had written up a 25 page writ of habeas corpus," and that Williamson would "definitely be home by" a certain date.

As already noted, petitioner did not testify before the committee, and in his brief he refers to no portion of the record which would indicate that the board's findings concerning the misrepresentations are without support.

4. Mills matter. The board found: In March, 1954, petitioner was employed by Lena B. Mills to represent her in a criminal case pending against her, and was paid a retainer fee of $300 therefor; petitioner "wilfully and negligently failed to appear on seven occasions when said criminal case was called for hearing, with the result that his client was ultimately represented by the Public Defender"; petitioner also "wilfully and negligently failed to perform any substantial services in behalf of his client in said cause."

Without detailing the record in this matter, it is sufficient to state that petitioner in his brief admits that he "was hired to represent the woman in question," but protests that on occasions when the matter was called for hearing and he failed to appear he was in a hospital, "which was known to the Court, who so stated to the defendant." Again, however, petitioner failed to testify before the committee, and in his brief makes no reference whatsoever to the record.

5. Steward matter. The board found: In June, 1953, petitioner was employed by Mrs. Steward to bring a divorce action on her behalf and was paid $42 on account; petitioner "wilfully and negligently failed to bring said action or, aside from his first conference with her, to perform any services in his client's behalf." At the client's request, petitioner made numerous appointments with her but "wilfully and

negligently failed to keep any of'' them. He also promised to return the $42 to his client, but failed to do so.

Again petitioner in his brief makes no reference to the record. He admits being employed by Mrs. Steward in the divorce matter but pleads that ''during all this period of time petitioner was trying cases whenever possible, with the exception of such time as petitioner was confined in bed or in a hospital because of illness. It may be true that petitioner was unable to confer with her at times. It is true that appointments might have been made by petitioner's office unknown to petitioner, but at no time did petitioner ever refuse to see her or to talk to her.''

6. Merritt matter. The board found: In July, 1950, petitioner was employed by one Merritt to represent him in a divorce action then pending against him, and was paid $265 therefor; at the time the cause was called for trial petitioner did not appear but caused another lawyer, not known to Merritt, to appear for Merritt. Judgment went against Merritt, and petitioner requested from him and was paid $50 for ''retrial papers.'' In September, 1952, petitioner caused a divorce complaint in Merritt's behalf to be filed. Merritt thereafter wrote numerous letters to petitioner concerning the matter, but petitioner wilfully and negligently failed to answer any of them. On at least two occasions petitioner told Merritt to be in court on a specified date at which time the divorce case would be called for trial, but the case was not called on any of such occasions and Merritt was informed by the court clerk that it was not on the calendar. Nothing further was done in the matter by petitioner.

Petitioner in his brief does not refer to the record, pleads that the other lawyer who appeared in the first Merritt divorce matter was petitioner's associate whose appearance was neither unusual nor injurious to Merritt's cause, and makes no reference whatsoever to the findings with respect to the second Merritt divorce case.

7. Anderson matter. The board found: In August, 1952, one Anderson employed petitioner to represent him in the defense of a divorce complaint filed against him, and paid petitioner $175 (corrected to read $75) on account of court costs; Anderson requested petitioner to file a divorce complaint in his own behalf and paid petitioner the requested sum of $375, of which petitioner stated $150 would be paid on account of the wife's attorney fees; petitioner later falsely told Anderson that he had paid the wife's attorney; Ander-

son made numerous unsuccessful attempts to confer with petitioner and secured many appointments all of which petitioner wilfully and negligently failed to keep; petitioner promised to repay $350 to Anderson but did not do so.

Petitioner in his brief states that he agreed to return to Anderson the money paid, but before petitioner was able to do so he was "again compelled to practically suspend all work by reason of . . . long protracted illness. . . . Petitioner has at no time ever been unwilling to repay this money, but felt that an effort to repay it while these hearings were being held might be misconstrued." Again petitioner makes no reference to the record, nor does he mention the finding as to his false statement to Anderson that the wife's attorney had been paid.

8. Krasky matter. The board found: In January, 1953, one Krasky employed petitioner to represent him in "straightening out some difficulty in connection with a demand for restitution made in connection with the terms of an order of probation entered in the United States District Court . . . in a matter in which Krasky had been convicted of a criminal offense." Petitioner was paid $150 on account. Aside from making and cancelling one appointment and making and failing to keep another appointment with the probation officer petitioner performed no services in connection with the matter. Krasky made several appointments with petitioner to confer but petitioner wilfully and negligently failed to keep any of them.

Petitioner testified before the committee in this matter. However, in his brief he merely asserts that "testimony to the contrary," he "contacted the interested parties. This matter was thoroughly discussed with Krasky and at no time was petitioner wilfully and negligently failing to keep any appointments with said Krasky." Again petitioner makes no reference to the record in support of his assertions.

9. Sullivan matter. The board found: In January, 1954, Mr. and Mrs. W. H. Sullivan (not related to petitioner) employed petitioner to bring an action in their behalf to enjoin abusive and disturbing activities on the part of one of their neighbors, and paid petitioner $700 on account. At various times, in response to inquiries from Mr. and Mrs. Sullivan, petitioner represented to them that action had been filed, and that process therein had been served, whereas petitioner knew none of such "actions was ever taken or done." Thereafter petitioner promised to repay the $700

to Mr. and Mrs. Sullivan, but failed to do so, and falsely told them he had deposited the money in their bank account. Petitioner later repaid $300 to the Sullivans but has not repaid the balance of the $700. While petitioner was representing the Sullivans they attempted on many occasions to arrange consultations with him but were unsuccessful.

In this matter petitioner also testified before the committee. His brief, however, makes no reference whatsoever to the record, but merely sets forth an alleged account of what petitioner had done for the Sullivans and asserted difficulties with the case. Petitioner does not mention the board's finding of misrepresentations to the Sullivans with respect to the filing of action, service of process, and deposit of money in their bank account.

In addition to the specific findings set forth hereinabove, the board also found generally that:

(a) For several years last past petitioner has habitually engaged in the practice of accepting professional employment and compensation therefor and thereafter wilfully and negligently failing to perform any substantial services in the matters;

(b) Such failure and neglect was not due to any ignorance, doubt, uncertainty, or mistake of judgment, on petitioner's part as to the applicable law or procedure, but was due to a callous disregard on his part of his duties and responsibilities to his clients;

(c) As part of such habitual course of conduct petitioner wilfully failed properly to inform his clients of the progress and status of their matters, resorted to half-truths, evasions, concealments and even deliberately false representations, to conceal the true state of affairs from his clients and to lull them into belief that their matters were being properly and expeditiously handled by him;

(d) Such habitual course of conduct, in the specific situations as found by the board, was grossly negligent conduct on petitioner's part amounting to and involving moral turpitude.

As related in the prior disciplinary proceeding (*Sullivan* v. *State Bar* (1955), *supra*, 45 Cal.2d 112, 117), petitioner was admitted to practice in this state in 1921. His age is now 62 years. The matters involved in the present proceeding occurred during approximately the same period of time as did those for which the prior discipline was imposed.

In reviewing a disciplinary proceeding this court

passes upon the sufficiency and weight of the evidence and is not bound by the findings of fact of the local committee or the board, although the burden of showing that the board's decision or action is erroneous or unlawful is upon the petitioner. (*Webb* v. *State Bar* (1957), 47 Cal.2d 866, 868 [306 P.2d 458], and cases there cited; Bus. & Prof. Code, § 6083.)

█ Petitioner has utterly failed to meet this burden. His petition to review the board's decision is not based on or supported by references to the record, and it is not verified, as required by subdivision (a) of rule 59, Rules on Appeal. Neither is it accompanied by a brief as required by the same rule. In response to direction from this court petitioner has subsequently filed a brief, but as already shown such statements therein as purport to be based on the record are not supported by appropriate reference to the record, as required by rule 15, Rules on Appeal. Although in petitioner's brief he states that his contention is that the findings of the board are not supported by the evidence taken at the committee hearings, he has made no effort to comply with the rules that his brief must point out the part of the record that sustains his claim of insufficiency of the evidence (see 4 Cal.Jur.2d 314, § 482, and cases there cited), and must fairly state all the material evidence relative to the point as to which such want of evidence is claimed to exist. (*In re Winne* (1929), 208 Cal. 35, 42 [208 P. 113].) Further, the record indicates various instances of noncooperation by petitioner in the proceedings before the local committees, including his nonappearance at scheduled hearings, following which continuances were granted for a period of over one year at petitioner's request in the one proceeding in which he finally did testify personally. As already shown, he failed to offer testimony in the other two proceedings, and makes no claim of a showing of lack of notice or that he was unable to appear and testify. The oral argument presented by petitioner before this court is, of course, to be regarded as argument, not as testimony.

█ Although petitioner pleads that his difficulties, as in the previous disciplinary matter (*Sullivan* v. *State Bar* (1955), *supra*, 45 Cal.2d 112, 120), were brought about largely because of poor health, it is manifest that his general course of professional conduct, as illustrated in the nine instances involved in the present proceeding, has been so far below the minimum standard acceptable from a member of the Bar of this state as to fully warrant the three-year period of suspension from practice recommended by the board. The fact that

ill health possibly contributed to various incidents of misconduct might be accepted as explanatory of the cause of such incidents but it cannot constitute an excuse for either indulging or continuing in the course of conduct.

It is ordered that Leo Aubrey Sullivan be suspended from the practice of law for a period of three years commencing 30 days after the filing of this order.

The application of petitioner for a rehearing was denied July 2, 1958, and the time for commencement of the period of the suspension from the practice of law was extended to begin September 5, 1958.