[S. F. No. 19983.   In Bank.   Oct. 6, 1959.]

LEO AUBREY SULLIVAN, Petitioner, v. STATE BAR OF CALIFORNIA, Respondent.

Leo Aubrey Sullivan, in pro. per., for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—Petitioner, Leo Aubrey Sullivan, seeks a review of the recommendation of the Board of Governors of the State Bar that he be disbarred.

In February 1953 Daniel Pederson paid Sullivan $300 to represent him in a criminal proceeding, and in April he paid Sullivan an additional $400 and was given a receipt stating that the money was to be used "for a forfeiture" and to finish the case.  Thereafter Pederson was convicted, fined $400 and placed on probation.  Sullivan promised to use the money to pay the fine, but he failed to do so, notwithstanding requests by Pederson and the latter's probation officer.

Pasko Domick, who had previously employed another lawyer to defend a civil action, paid Sullivan $500 in December 1953

to assist in the defense. Sullivan did not consult with the other attorney, or appear in court, or in any way assist in the defense of the action. After the trial Sullivan agreed to return the fee, but he failed to do so, and Domick obtained a default judgment against him.

Early in 1953 Jose Bravo was arrested in San Francisco and allegedly "beaten up" by the arresting officers. He paid Sullivan $140 to represent him in the defense of the criminal action and to bring a civil action against the officers for using unreasonable force in effecting his arrest. Sullivan represented Bravo at the criminal trial and prepared a verified claim against the police officers and certain city officials which was served by Bravo at Sullivan's direction. Thereafter Sullivan told Bravo that there had been an offer to settle the case for $35,000, that the amount had been reduced and that an insurance company was holding $30,000 to pay the claim. These representations were false, and in fact Sullivan did not file any action or perform any services in connection with the claim, no settlement was obtained, and no money was received by Bravo.

Sullivan was retained to defend Donald Heintz on a charge of grand theft and was paid a fee for representing him at the trial. Heintz was convicted and placed on probation for a period of three years. Thereafter, in February 1954, Heintz paid Sullivan $300 for services to be rendered in seeking to have the judgment of conviction set aside. The receipt for the payment stated that the money was to be returned if Heintz was not "completely discharged of all charges" in five days. He was not freed of the charges, no motion for a new trial was made or appeal taken, and no other proceedings were initiated in the case by Sullivan. Although request was made for return of the $300, the money had not been repaid at the time of the hearing in October 1957.

In June 1954 Raymond Wootten was sentenced to imprisonment at San Quentin after pleading guilty to two counts of violation of section 288 of the Penal Code. On the following day his daughter-in-law paid Sullivan $500 to appeal from the judgment of conviction. Sullivan had a short interview with Wootten but did not take an appeal or otherwise seek relief from the judgment, although on several occasions he told Wootten's daughter-in-law that he was going to file an appeal. Wootten served his sentence. No refund has been made by Sullivan.

Manuel Lewis consulted Sullivan in August 1954 regarding the recovery of certain real property owned by his mother before her death, and he paid Sullivan $500 for services to be rendered. Sullivan's only activity was to obtain the signatures of Lewis and his sister on a printed form which was apparently a claim against the mother's estate. Upon inquiry Lewis found that the property had been held in joint tenancy by his mother and his stepfather and that a decree establishing the fact of death and terminating the joint tenancy had been entered. Lewis sought a refund of the fee and was paid $150. Later, in 1957, he obtained a judgment against Sullivan for the balance of $350 which is unpaid.

In 1954 Richard Davis was arrested and charged with robbery in Alameda County. He was also charged with robbery under federal law. Sullivan was retained by Davis' mother and was paid a fee of $750. Thereafter the mother consulted Sullivan to arrange for bail and was referred to a bail bond broker who refused to act until the federal charge was dropped. The mother then paid $300 to Sullivan and was given a receipt to the effect that the money was to be returned if the federal charge was not dropped or if bail was not made for any reason. Davis was not released on bail, and Sullivan agreed to return the $300 but failed to do so.

Pinto de Sa employed Sullivan in December 1954 to represent him in proceedings to obtain custody of his adopted daughter and paid $125 of an agreed fee of $150. No pleadings were filed by Sullivan, and in March 1955 de Sa was served with a citation in guardianship proceedings commenced by third parties. Later de Sa was told that the hearing had been postponed, and he was given similar information on a number of later occasions. In August 1955 the third parties were appointed guardians, and letters of guardianship were issued to them in September. Sullivan did not make any appearance on behalf of de Sa in these proceedings, and he failed to perform any services as agreed.

In April 1955 Sullivan was paid $145 to defend Oscar Hawkins in a divorce action. He told Hawkins that he would charge the plaintiff with extreme cruelty and that Hawkins "wouldn't have to pay anything." Sullivan appeared for Hawkins at the hearing on an order to show cause for temporary alimony, and Hawkins was ordered to pay $75 a month temporary support and $175 for his wife's attorney. Sullivan told Hawkins not to pay the amounts ordered, although he had no legal ground for refusing to pay, and thereafter

Hawkins was subjected to two writs of execution and was forced to employ another attorney to obtain a release of his pay check. No answer or other pleading was filed by Sullivan on behalf of Hawkins.

Henry Wheeler employed Sullivan to obtain custody of his daughter from his former wife and paid $50 to Sullivan in August 1955. Sullivan did not perform any services, and several months later Wheeler stated that he would like his money back if Sullivan was not going to take care of the case. Sullivan agreed to repay the money but failed to do so, and Wheeler subsequently obtained a default judgment for the amount of the fee.

In October 1956 Norma Bobo employed Sullivan to bring an action for divorce and paid a fee of $140. After a complaint was filed and served on the husband, Sullivan advised Mrs. Bobo that the proceedings should be delayed until the fact of her suspected pregnancy could be confirmed. In January, when she notified Sullivan that she was certain of that fact, he told her that he would amend the complaint to include a request for child support. Thereafter Mrs. Bobo repeatedly requested Sullivan to proceed with the case, but nothing further had been done at the time of the local administrative committee hearing in November 1957.

In explanation of his conduct Sullivan represented to the Board of Governors that he had been ill and that twice he had been confined to a hospital for several months. He stated that he was without funds when he was released from the hospital and that, while he had intended to return the money which he had received from his clients, he had been unable to do so because of personal and income tax difficulties.

A prior disciplinary proceeding against Sullivan resulted in a suspension of three months based upon three instances of misconduct similar to those shown in the present case. (*Sullivan* v. *State Bar*, 45 Cal.2d 112 [287 P.2d 778].) In a second proceeding, which involved proof of nine charges of similar misconduct, he was suspended for three years. (*Sullivan* v. *State Bar*, 50 Cal.2d 491 [326 P.2d 138].) This second proceeding had not been concluded at the time of the hearings before the local administrative committee in the present case, and that committee recommended that Sullivan be suspended for a period of one year. The Board of Governors thereafter recommended that he be disbarred.

The record shows that as a settled and habitual course of conduct Sullivan accepted compensation for professional

employment and then wilfully failed to perform any substantial services in the matter for which he was employed. It appears that his failure to perform services was due to a wilful disregard of his duties and responsibility to his clients and that on a number of occasions he misrepresented to clients the true status of their matters and caused them to believe that the cases were being properly handled. This habitual course of action involved gross negligence, dishonesty and conduct amounting to moral turpitude. The misconduct, which continued over a rather extensive period and consisted of a large number of improper acts, clearly warrants disbarment.

It is ordered that Leo Aubrey Sullivan be disbarred and that his name be stricken from the roll of attorneys of this state, the order to become effective 30 days after the filing of this opinion.