[S. F. Nos. 20256, 20287.   In Bank.   Feb. 11, 1960.]

HERBERT RESNER, Petitioner, v. STATE BAR OF
CALIFORNIA, Respondent.

[Two Cases.]

Roger Bramy for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—Herbert Resner, a member of the State Bar, seeks a review of two disciplinary proceedings in the first of which the Board of Governors of the State Bar recommended a two year suspension. (S.F. No. 20256.) Five weeks later the Board of Governors recommended disbarment based upon the record in the earlier proceeding and the record then before it in the second matter. (S.F. No. 20287.)

The petitioner was admitted to the practice of law in 1935. He is now 50 years of age. No prior disciplinary proceedings have been taken against him. At the times in question he was conducting an individual practice in Los Angeles and later in San Francisco involving, for the most part, claims by longshoremen and merchant seamen for personal injuries sustained in the course of their employment. His practice required that

he receive and handle sums of money paid in settlement of claims in behalf of his clients. The charges in each of the present proceedings arise out of the manner in which he administered the funds thus entrusted to him.

From undisputed testimony it appears that the petitioner, in April 1957, received a draft for $1,800 in settlement of a claim in which he represented one John Grosso, a seaman in the merchant marine. By agreement with Grosso, the petitioner's fee in connection with presentation of the claim was one-third of the amount recovered, or $600. The petitioner deposited the whole amount of the draft in a personal business account he maintained in the Security First National Bank in Los Angeles. Thereafter he used the $1,800 for his own purposes, the balance in his account falling as low as $5.52 on or about June 20, 1957. Between April and November, 1957, Grosso, on several occasions, inquired as to when he could expect to receive his money and the petitioner misrepresented to Grosso that the matter was still pending and that no funds had yet been made available. In November the petitioner gave Grosso a check for $1,200 drawn on a personal business account maintained by the petitioner in the Bank of Tokyo in San Francisco. This check was not honored by the bank for the reason that there were not sufficient funds in the account when presented for payment. Again in December the petitioner gave Grosso a second check drawn on another personal business account maintained in the Bank of America in San Francisco, and this check was not honored for the same reason. On February 11, 1958, after Grosso had complained to the State Bar, the petitioner delivered a cashier's check for $1,200 to Grosso.

On December 11, 1958, a hearing was had before a local administrative committee for Los Angeles County. Evidence of the petitioner's conduct was introduced. The petitioner's testimony was generally consistent with the foregoing account. He admitted that he gave Grosso false information concerning the receipt of the $1,200. He made a statement at the conclusion of the hearing, in part as follows: ''I am wrong . . . I think I handled this matter very poorly and . . . have suffered enormously by it to this point, and probably will in the future. And I was both careless and negligent about it, and wrong, and all I can tell you is that over the period of the past few years, and particularly at that time I had a large number of personal and family troubles . . . which probably accounts for my actions in the matter. I have dealt with seamen and

longshoremen over a period of many years in a very informal manner, and have always gotten along quite well. I had expected to see Mr. Grosso and straighten the matter out. Unfortunately it didn't turn out that way.''

When questioned by Mr. Donald Dewar, a committee member, about the maintenance of a trust account, the petitioner stated: ''It is naturally in your mind because I am familiar with the rule. Dealing as I do with seamen and longshoremen the way I handle these things is either take the man to the bank and cash their check and give them funds, or take an authorization and send them a cashier's check, because they usually travel and are not available, and it is the simplest and most expeditious way to handle it.

''Mr. Dewar: Do you maintain a trust account, clients' trust account? A. No, I don't. I have just been proceeding as I just outlined to you. . . . I am handling it as I said just by taking the client to the bank and cashing such checks as they are issued. I don't assume there is anything wrong with that, because if there is I would like to know.

''Mr. Dewar: Well, my last question is have you ever read the Rules of Professional Conduct? A. I have read them since this proceeding came up, and I am aware of it now.

''Mr. Dewar: I have no further questions. A. I feel I should have a trust account according to the rules.

''Mr. Dewar: I think you should.''

Rule 9 of the Rules of Professional Conduct, 47 Cal.2d 10, provides in part: ''A member of the State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client. Unless the client otherwise directs in writing, he shall promptly deposit his client's funds in a bank or trust company, authorized to do business in the State of California, in a bank account separate from his own account and clearly designated as 'Clients' Funds Account' or 'Trust Funds Account' or words of similar import. . . .''

Based on the foregoing the local committee recommended disbarment. The petitioner moved for leave to introduce additional evidence, and a further hearing was had on April 24, 1959. At the second hearing evidence on behalf of the petitioner was introduced to the effect that for the past few years he had serious family and financial problems. The petitioner stated that many of his financial problems were due to his

carelessness and mismanagement. He stated: "Well . . . I've gotten myself into such a turmoil with this problem and others . . . I haven't been much good for anything this past year or two. . . . I don't think I'll ever get out of the bind. And that's about the story. That's why I got into this scrape and several others in San Francisco. Mr. Mack [his attorney] will tell you about. . . ."

In response to an inquiry whether he presently had a trust account, the petitioner stated: "No. My present relationship is to transmit the funds to the client receiving them, to take the man to the bank and give him his money. That as a matter of fact is the way in which I have handled most of my work with longshoremen. They prefer it that way." He was questioned at some length in regard to his failure to maintain a trust account and his present method of handling funds. He stated that he would have to comply with the Rules of Professional Conduct in the future, but as to his failure to establish such an account up to the present time he had been drifting along waiting for the present matter to be settled. When this line of reasoning was questioned he stated that he agreed with the rules and would subscribe to them "promptly."

By a supplemental report dated May 7, 1959, the committee referred to mitigating circumstances and reduced its recommended discipline to a two-year suspension.

At the hearing before the Board of Governors on May 19, 1959, the petitioner was asked again if he had established a trust account. He stated: "I have no reason for one. At this particular point, in every wind up of a case I have participated in in recent months I have taken the man to the bank and given him his money right there." The petitioner stated that he was familiar with the rules and that "of course, if I am permitted to continue on I certainly intend to abide by them." He added: "I do say that a trust account is the proper way to handle things, although the basic thing to me always is, is the client fairly treated and does he get what he was contracted to have."

The board, by a vote of 9 to 2, recommended a two-year suspension, the dissenting votes being on the ground of insufficient discipline.

In the second matter now before us, S. F. No. 20287, there is evidence of similar misconduct on the part of the petitioner in the handling of client's funds in two separate instances. In January, 1957, the petitioner filed an action in federal district court in behalf of one James Murphy for injuries suffered in a

maritime accident. The suit was settled for $750 which was paid to the petitioner in the form of a check for which the petitioner had obtained an authorization from Murphy to sign Murphy's name. On or about April 16, 1958, the petitioner deposited the proceeds from the check in his personal account in the Bank of America in San Francisco and gave Murphy his personal, postdated check for $450 drawn on the petitioner's account in that bank. On May 2 and again on May 6 the client attempted to cash the check but was unable to do so for lack of sufficient funds. On May 7, after Murphy had complained to the petitioner, the petitioner sent Murphy a cashier's check for $450 in full payment. In explanation of this matter, the petitioner stated that it was his understanding that "there were no funds in there [the petitioner's account] belonging to Mr. Murphy at all" because the petitioner had already given Murphy a check for his full share.

On the foregoing evidence a local administrative committee in San Francisco concluded that rule 9, heretofore set out, had been violated.

In the second count in S. F. No. 20287, the petitioner obtained a judgment in behalf of Laurence Skow, which judgment was settled for $3,450. On May 6, 1958, the petitioner deposited part of the proceeds, a $500 check, in his personal account in the Bank of America in San Francisco, and on May 14 he deposited the balance of the settlement in the same account. Between May 12 and June 10, 1958, there was less than the client's share of the proceeds in the account. A check for $1,600 was delivered to Skow by the petitioner, but there was insufficient funds in the account when presented by Skow for payment on three different occasions. On or about June 10, 1958, the petitioner gave Skow a cashier's check for the balance due.

The committee concluded, in substance, that rule 9 had been violated by the petitioner. As to both matters in S. F. No. 20287, the committee recommended no more than a public reproval, stating that "the committee feels that respondent did not wilfully intend to steal or misappropriate money . . . and did not wilfully intend to commit an act of moral turpitude."

The Board of Governors, on June 26, 1959, in considering the record and recommendations of the committee in the Murphy and Skow matters, combined with them the record in the Grosso matter and adopted amended findings of facts which departed in substance from the findings of the committee in

that the board found that the petitioner intentionally appropriated his client's funds to his own uses and purposes. The board made no recommendation as to discipline on either or both counts in the Murphy and Skow matters but, by a vote of 9 to 5, recommended disbarment upon the combined records. The petitioner elected not to appear before the board at that time.

The foregoing conduct must be deemed to constitute a violation of the petitioner's oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068), the commission of acts involving moral turpitude (Bus. & Prof. Code, § 6106),[1] and a violation of rule 9, Rules of Professional Conduct.     It has recently been said in *Sturr* v. *State Bar*, 52 Cal.2d 125 at page 134 [338 P.2d 897]; "Misappropriation of funds entrusted to an attorney at law is a gross violation of general morality as well as professional ethics and, in addition, is likely to endanger the confidence of the public in the legal profession. It deserves severe punishment. In *Mills* v. *State Bar*, 6 Cal.2d 565 [58 P.2d 1273], a case involving the misappropriation of clients' funds, this court said at page 567 [3]: 'Whatever might be said in favor of a milder punishment for single misdemeanors not involving deliberate moral turpitude, there is no doubt in our minds that any lawyer who is guilty of habitual misuse of the funds of his clients should be deprived of the license under which he is authorized to practice law, and by which he has been recommended to the public as a person worthy of trust.' (See also *Narlian* v. *State Bar*, 21 Cal.2d 876, 887 [5] [136 P.2d 553].)"

It is noted that the recommendation for disbarment resulted from the board's consideration of the combined records. Petitioner raises no objection to the board's action in this respect.

Rule 29.1, Rules of Procedure of the State Bar of California provides in part:

"Section 1. Admissible Records. The record in any prior disciplinary proceeding against the same respondent, or any pertinent part thereof, is admissible in evidence (a) if, under the rules of relevancy, it tends to prove any fact at issue in the

---

[1]Business and Professions Code, section 6106: "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension.

If the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding is not a condition precedent to disbarment or suspension from practice therefor."

pending proceeding, (b) for the purpose of giving aid in determining the degree of discipline to be administered; provided ...

"(2) Such record contains findings of fact made in a formal proceeding of which the respondent had notice, or at which he appeared. ..."

This rule has been deemed to be authority for the consideration of other records then pending in determining discipline, although there had been no formal consolidation of records. (*Sullivan* v. *State Bar*, 50 Cal.2d 491, 496 [326 P.2d 138].)

As the ultimate purpose of a disciplinary proceeding is to determine the fitness of the attorney to practice law, rather than to punish for individual breaches of conduct (*In re Rothrock*, 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226]), it would appear that a committee, or the Board of Governors, or this court might consider all matters properly before it, even though extrinsic to the instant record, in determining an attorney's fitness to practice. No denial of any inherent right of an attorney is suggested by such a procedure. (See also *Hennessy* v. *State Bar*, 18 Cal.2d 685, 687 [117 P.2d 326]; *Petersen* v. *State Bar*, 16 Cal.2d 57 [104 P.2d 769].)

In the instant matter the petitioner's conduct in the Murphy and Skow matters has a special significance when the record in the Grosso matter is considered therewith. What might be considered to be acts of carelessness and minor departures from the strict rule of law in the Murphy and Skow matters becomes a serious breach thereof when the combined records are taken into consideration. The combined records demonstrate a continuing course of misconduct on the petitioner's part, rather than isolated acts. The prior record not only tends to prove facts in issue, but gives substantial aid in determining the degree of discipline to be administered. (Rule 29.1 of the Rules of Procedure of the State Bar of California.) There is no fault in the recommendation of the board being based upon the combined records.

This court, of course, passes upon the sufficiency and weight of the evidence and is not bound by findings of fact of the local committees or board, although the burden of showing that the board's action is erroneous or unlawful is upon the petitioner. (*Sturr* v. *State Bar, supra*, 52 Cal.2d 125 127; *Sullivan* v. *State Bar, supra*, 50 Cal.2d 491.)

Each case, of course, must be considered on its own merits.

In the instant case the petitioner pleads for an "oppor-

tunity to rehabilitate himself in his practice.'' We are not, in this proceeding, concerned with rehabilitation although the probability that a petitioner might in the future correct his faults would be a proper item of consideration in the determination of his fitness to continue to practice. It is significant in this respect that throughout the two proceedings before the local committees and the Board of Governors in the Grosso matter, it was repeatedly pointed out to the petitioner that most of his troubles might have been avoided had he maintained a proper trust account as required by rule 9, Rules of Professional Conduct. He agreed that this was true, and professed his intention to conduct his affairs in a proper manner in the future. Yet, he consistently refused to establish a trust account during the four months of intermittent hearings. All the while he continued to conduct a practice which, by his own admission, involved the holding of funds belonging to merchant seamen for indefinite periods of time during their absence from port. In view of these circumstances his plea of a desire to rehabilitate himself is manifestly open to some question.

There is evidence that the petitioner was confronted with financial and family problems during the period involved. Such matters may properly be considered in mitigation of the discipline to be imposed. We are not persuaded in the present case, however, that these circumstances are the sole reason for petitioner's difficulties. He states that he has never maintained a trust account in his 22 years of practice prior to his present difficulties, and admits that it was this failure to comply with rule 9 that has caused his present plight. He has failed to remedy that situation notwithstanding repeated admonitions and promises to do so.

It is also contended by the petitioner that he has made full restitution in each case. In *Maggart* v. *State Bar,* 7 Cal.2d 495, it is held at page 502 [61 P.2d 451] that: ''The petitioner is not entitled to any indulgence by reason of restitution of moneys wrongfully retained, especially where such restitution is made merely as a matter of expediency and under pressure. (*Herrscher* v. *State Bar of California,* 4 Cal.2d 399 [49 P.2d 832].)''

The rules which the petitioner violated were designed to prohibit unprofessional conduct. The records here disclose an unrelenting indifference to the obligations of an attorney by deliberately commingling and diverting his clients' funds to his own uses and purposes. The violation of the trust which both the individual client and the general

public repose in an attorney in the handling of funds entrusted to him is a most grievous breach of professional ethics and morality. An attorney who is shown to have embarked on a course of conduct during which such breaches become commonplace is not entitled to be recommended to the public as a person worthy of trust, and accordingly not entitled to continue to practice law. In our opinion disbarment is warranted under the circumstances disclosed by the record.

It is therefore ordered that the petitioner, Herbert Resner, be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this opinion.